IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SEANETTE JOHNSON,

      Plaintiff,

v.                                         No. 1:11-cv-01047-JDB-egb

TOTAL RENAL CARE, INC.,
d/b/a/ DAVITA DIALYSIS,
d/b/a NORTH JACKSON DIALYSIS,

      Defendant.

_____

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

The Plaintiff, Seanette Johnson, instituted this lawsuit against her former employer, Defendant, Total Renal Care, Inc. ("Total Renal"), in the Circuit Court of Madison County, Tennessee on January 14, 2011. Johnson's complaint alleges that the Defendant terminated her employment in retaliation for filing a workers' compensation claim in violation of Tennessee law. Total Renal removed the case to this Court on the basis of diversity of citizenship, 28 U.S.C. §§ 1332, 1441. Before the Court is the Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry ("D.E.") No. 12.) The Plaintiff has responded in opposition to the motion, to which Defendant filed a reply. (D.E. Nos. 13, 14.) Because genuine issues of material fact exist concerning the reason for the Plaintiff's dismissal, summary judgment in favor of the Defendant is DENIED.

I.  FACTUAL BACKGROUND

Total Renal, a dialysis treatment provider, employed the Plaintiff as a Patient Care Technician in one of its Jackson, Tennessee clinics from April 14, 2003 until her termination on

January 19, 2010. (Def.'s Stmt. of Undisputed Material Facts ¶ 1, D.E. No. 12-2; Pl.'s Corrected Resp. to Def.'s Stmt. of Undisputed Material Facts ¶ 1, D.E. No. 25.) Total Renal has a drug-free workplace policy that prohibits the use of illegal narcotics, as well as prescription drugs for which the employee does not have a prescription. (Def.'s Stmt. of Undisputed Material Facts ¶ 2, D.E. No. 12-2.) Employees "who violate this policy are subject to immediate discipline, up to and including termination." (Id.) Plaintiff was aware of the drug-free policy and the potential consequences for violating it. (Id.) When an employee files a claim for workers' compensation benefits, the Defendant requires that he or she submit to a drug test. (Pl.'s Stmt. of Additional Facts ¶ 9, D.E. No. 13.)

On Saturday, December 26, 2009, the Plaintiff suffered a lower back injury when a dialysis patient fell on her as she was helping the patient off of a bus. (Def.'s Stmt. of Undisputed Material Facts ¶ 4, D.E. No. 12-2; Pl.'s Stmt. of Additional Facts ¶ 2, D.E. No. 13.) The injury caused pain to flow into Plaintiff's left leg. (Pl.'s Stmt. of Additional Facts ¶ 2, D.E. No. 13.) Because the accident occurred on a weekend, Total Renal's administration was not available for Johnson to follow standard workers' compensation reporting procedures. (Id. at ¶ 5.) The Defendant also could not immediately provide her with a company doctor. (Id.) Thus, Plaintiff called her supervisor, Facility Administrator Marcia Dillingham, to report the injury. (Id.; Dillingham Decl. ¶¶ 2–4, D.E. 12-3.) Dillingham directed Plaintiff to a location where she could find a workers' compensation claim form, and Johnson completed the form at Dillingham's direction. (Pl.'s Stmt. of Additional Facts ¶ 5, D.E. No. 13.)

Although she was in discomfort following the incident, Plaintiff deemed it necessary to complete her shift because Total Renal was short-staffed that Saturday. (Id. at ¶ 6.) She was aware from a prior injury that the Jackson Clinic Convenient Care was an authorized workers'

2

compensation doctor for Total Renal. (Id.) She also knew that Denny Brown, an employee of Total Renal, who also worked at the Convenient Care, was on duty at the Clinic that day. (Id.) Thus, she called Brown to inquire about obtaining relief for her back pain until she could get in to see a doctor. (Id.) After completing her shift, Johnson went home to lay down.[1] (Id. at ¶ 7.) Sometime that evening, Brown brought seven samples of Bupap, a tablet containing 50 milligrams of Butalbital and 750 milligrams of acetaminophen, from the Clinic to Plaintiff's home.[2] (Id.)

Johnson spoke by phone with her supervisor again the day of the accident, and Dillingham, who is a registered nurse, asked the Plaintiff if she "had anything at the house to take" for her injury. (Id.; Dillingham Decl. ¶¶ 2–3, D.E. 12-3.) According to Plaintiff, Dillingham told her to take the samples that Brown provided her and "see how that worked over the weekend." (Pl.'s Stmt. of Additional Facts ¶ 7, D.E. No. 13.) Johnson testified that she took some of the sample medication but had never previously taken any other barbiturate. (Id. at ¶ 8.)

On the following Monday, December 28, Johnson saw Dr. Gary McBride with the Jackson Clinic Convenient Care. (Def.'s Stmt. of Undisputed Material Facts ¶ 5, D.E. 12-2; Pl.'s Stmt. of Additional Facts ¶ 8, D.E. No. 13.) Dr. McBride provided her with additional medication for her injury.[3] (Pl.'s Stmt. of Additional Facts ¶ 8, D.E. No. 13.) During the visit, Plaintiff informed the Clinic that she needed to submit to a drug test related to her workers'

---

[1] The Defendant lodged an objection to this fact on the basis that it was "opinion, inadmissible hearsay, and argument and . . . not supported by a 'specific citation to the record.'" (Def.'s Resp. to Pl.'s Stmt. of Additional Facts ¶ 7, D.E. No. 15.) The Court has considered the objection and finds that the proposed fact is supported by Plaintiff's affidavit and is not an opinion, hearsay, or argument. (See Johnson Aff. ¶ 4, D.E. No. 13-1.) Additionally, Total Renal has not presented a citation to contradictory proof in the record. Thus, the fact is deemed admitted.

[2] Defendant raised the same objection to this fact as discussed in note 1. For the same reasons stated there, the Plaintiff's fact is deemed admitted.

[3] Again, Defendant has objected to this fact on the basis that it was "opinion, inadmissible hearsay, and argument and . . . not supported by a 'specific citation to the record.'" (Def.'s Resp. to Pl.'s Stmt. of Additional Facts ¶ 8, D.E. No. 15.) The Court finds that it is supported by the record and otherwise admissible. (See Johnson Depo. 143, D.E. No. 12-4; Johnson Aff. ¶ 4, D.E. No. 13-1.) Thus, it is deemed admitted.

compensation claim, which she did by providing a urine sample the following day. (Def.'s Stmt. of Undisputed Material Facts ¶¶ 5–6, D.E. No. 12-2; Pl.'s Stmt. of Additional Facts ¶ 9, D.E. No. 13.) Johnson was told that the sample would be tested for controlled substances, including barbiturates. (Def.'s Stmt. of Undisputed Material Facts ¶ 6, D.E. No. 12-2.) She was also asked to list all medications that she had taken in the last thirty days. (Id. at ¶ 7.) Johnson complied, indicating that she had taken Amitriplian, Flexeril, and Darvocet. (Id.) She neglected to include taking the Bupap sample, however. (Johnson Aff. ¶ 6, D.E. No. 13-1.)

On December 31, Dillingham received the Plaintiff's test results, which revealed that her urine sample contained traces of Butalbital and barbiturates. (Def.'s Stmt. of Undisputed Material Facts ¶ 8, D.E. No. 12-2.) Because none of the medications that the Plaintiff disclosed contained those substances, Dillingham contacted her to ask if she had an explanation for the test results. (Id. at ¶ 9.) Johnson explained that the sample given to her by Brown was Bupap, an analgesic that contained Butalbital. (Id. at ¶ 10.) Plaintiff also told Dillingham that the sample was authorized by Dr. Weaver at Jackson Clinic Convenient Care.[4] (Id.) She never provided Defendant with a written prescription for that medication, however. (Id. at ¶ 11.)

Dillingham discussed the Plaintiff's test results with Yolanda Fowler, Total Renal's People Services Manager. (Dillingham Decl. ¶ 7, D.E. No. 12-3.) On January 19, 2010, Dillingham informed Plaintiff that she was terminated for submitting the positive drug screen in violation of Defendant's drug-free workplace policy. (Def.'s Stmt. of Undisputed Material Facts ¶ 13, D.E. No. 12-2; Pl.'s Stmt. of Additional Facts ¶ 10, D.E. No. 13.) According to Dillingham, it was Fowler's recommendation that the Plaintiff be dismissed from her job. (Dillingham Decl. ¶ 7, D.E. No. 12-3.) Plaintiff likewise stated that she understood Fowler to be the person who

---

[4] Although Plaintiff contends that the sample medication was approved by Dr. Weaver, she admits that she never spoke to or was examined by him. (Def.'s Stmt. of Undisputed Material Facts ¶ 11, D.E. No. 12-2.)

decided to fire her. (Johnson Depo. 188, D.E. No. 12-4.) When asked during her deposition if she knew whether Fowler was aware that she had filed a workers' compensation claim at the time she made the termination decision, Johnson responded that she was not sure. (Pl.'s Resp. to Def.'s Stmt. of Undisputed Material Facts ¶ 14, D.E. No. 25; Johnson Depo. 189, D.E. No. 12-4.)

During her tenure at Total Renal, Plaintiff had one prior work-related back injury for which she sought and received workers' compensation benefits. (Def.'s Stmt. of Undisputed Material Facts ¶ 3, D.E. No. 12-2; Pl.'s Stmt. of Additional Facts ¶¶ 3–4, D.E. No. 13.) That injury occurred on December 26, 2007 and kept Johnson off work for approximately six months. (Pl.'s Stmt. of Additional Facts ¶¶ 3–4, D.E. No. 13.) As with the 2009 workers' compensation claim, Total Renal required Plaintiff to take a post-accident drug test. (Def.'s Stmt. of Undisputed Material Facts ¶ 3, D.E. No. 12-2.) Johnson conceded that no one at Total Renal ever made negative statements regarding her workers' compensation claims. (Id. at ¶ 15.) She also stated that she did not know if any employees of the Defendant have previously failed a drug test but were not fired for violating company policy. (Id.)

## II.  STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that

> [a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must

present some "specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). "A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." <u>Pucci v. Nineteenth Dist. Court</u>, 628 F.3d 752, 759 (6th Cir. 2010) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Poss v. Morris (In re Morris)</u>, 260 F.3d 654, 665 (6th Cir. 2001) (quoting <u>Celotex</u>, 477 U.S. at 322, 106 S. Ct. at 2552). In reviewing a motion for summary judgment, the evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587, 106 S. Ct. at 1356.

## III. ANALYSIS

A. Evidentiary Objections

The parties have lodged several evidentiary objections, which the Court must consider in accordance with Fed. R. Civ. P. 56(c)(2) and Local Rule 56.1(e). First, Total Renal Care objects to portions of the Plaintiff's affidavit and deposition testimony that are based upon statements of Denny Brown. For example, Johnson stated in her affidavit:

> [Brown] was kind enough to speak to one of the doctors and his nurse at Convenient Care about my work related injury (Dr. Steve Weaver) and I was informed by Denny that Dr. Weaver had given Denny some Bupap samples from the Clinic and was told to give them to me to take over the weekend while I waited to obtain a scheduled appointment through work comp for the beginning of the week.

(Johnson Aff. ¶ 4, D.E. No. 13-1.) Rule 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the proof of the matter asserted." Fed. R. Evid. 801. The Defendant is correct that Johnson's straight recitation of Brown's statements (and Weaver's statements to Brown) is inadmissible as hearsay under Federal Rule of Evidence 802. Accordingly, the Court will disregard that evidence in deciding the summary judgment motion. See Alpert v. United States, 481 F.3d 404, 409 (6th Cir. 2007) (instructing court to disregard hearsay evidence submitted in opposition to summary judgment); Williams v. York Int'l Corp., 63 F. App'x 808, 814 (6th Cir. 2003) ("Hearsay is inadmissible in affidavits submitted in conjunction with, or in opposition to, motions for summary judgment.").

Nevertheless, Plaintiff can testify to what she told Dillingham about her conversation with Brown. Johnson's affidavit stated "I clearly told [Dillingham] that I had called Denny and that this medication was being provided to me by Jackson Clinic Convenient Care via samples from the Doctor and she was fine with that." (Johnson Aff. ¶ 4, D.E. No. 13-1.) She similarly testified during her deposition in response to questioning by counsel for the Defendant as follows:

> I let [Dillingham] know that I had spoke[n] with Denny and . . . he said that he would speak with one of our doctors to see if he could help me with the – with any of the medication to help me with my back until I could get to the doctor.
>
> And then he did, and I let Marsha know, Marsha Dillingham know that he had that for me. And she told me to take the medication and see how that worked over the weekend.

(Johnson Depo. 132–33, D.E. No. 12-4.) Although Johnson's statements to Dillingham are not admissible for the truth of the matters asserted, the trier of fact may consider them for another purpose: Dillingham's knowledge about the cause of Johnson's drug screen. The above cited

excerpts tend to that show that Dillingham had reason to know that Plaintiff's positive test for Butalbital and barbiturates came from an authorized sample of Bupap. Should the jury accept Plaintiff's testimony about what she told Dillingham, it could conclude that her drug test results were not the true reason for her termination.

Total Renal also objects to a chart note that was attached as an exhibit to the Plaintiff's affidavit and deposition and relied upon to support her factual assertions. The chart note purports to be from The Jackson Clinic and was electronically signed by Misty Reeves, LPN on Thursday, January 28, 2010 at 12:10 p.m, which was approximately one month after the Plaintiff was given the sample. (Ex. 14 to Johnson Depo., D.E. No. 12-4; Ex. to Johnson Aff., D.E. No. 13-1 at 7.) It states that "Pt was given samples of Alagesic which contains Butalbital on 12/27/09 by Dr.Steve Weaver for back pain.------M.Reeves,LPN." During her deposition, Johnson explained that she called the Jackson Clinic Convenient Care after she was terminated in an attempt to obtain proof that she was given the medication samples by a doctor. (Johnson Depo. 175, D.E. No. 12-4.) Plaintiff stated that she spoke with the phone nurse, Misty Reeves, who she had never previously talked with. (Id.) Johnson related that she picked up a hard copy of the chart note at the clinic but never saw or met with Reeves. (Id. at 175–76.) The Plaintiff further testified that she used the chart note to obtain unemployment benefits but did not give it to anyone affiliated with Total Renal. (Id. at 176.)

Defendant contends that the chart note is inadmissible hearsay under Fed. R. Evid. 802 and was not authenticated as required by Fed. R. Evid. 901. The Court agrees. Reeves' statement that Dr. Weaver gave samples of an alagesic to the Plaintiff almost one month earlier is hearsay as it appears to be based solely on information that she received from other sources. See Alpert, 481 F.3d at 409 ("Alpert's statement regarding the writing off of debts by Microsoft and CCA

Advertising was apparently based solely upon information that he received from elsewhere and is thus inadmissible hearsay."). Additionally, the chart note has not been authenticated under Rule 901(a). To do so, the reliant must present "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Rule 901(b) contains several examples of authentication that will satisfy the rule, including "[t]estimony that a matter is what it is claimed to be." Fed. R. Evid. 901(b). The comments to the rule suggest that authentication of a signed document would include "testimony of a witness who was present at the signing of a document." Fed. R. Evid. 901(b), advisory committee notes. The lack of any authentication of the chart note from nurse Reeves, Dr. Weaver, or anyone with knowledge of its veracity makes it inadmissible. See Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009) (pointing out that the Sixth Circuit has "repeated[ly] empha[sized] that unauthenticated documents do not meet the requirements of Rule 56(e)"); Harlamert v. World Finer Foods, Inc., 489 F.3d 767, 773 (6th Cir. 2007) (district court did not abuse its discretion in refusing to admit signed document that was not authenticated by its author or others with knowledge of its making).

The Defendant's third objection is to an article on Butalbital obtained by the Plaintiff from Wikipedia, a free online encyclopedia. Johnson stated in her affidavit that "[i]t [was her] understanding that [the Butalbital/barbituarate content] is commonly known regarding Bupap and [she] even easily obtained information on the internet entitled 'Butalbital' which confirms that Butalbital (Bupap) is a barbiturate from the well known encyclopedia Wikipedia . . . ." (Johnson Aff. ¶ 5, D.E. No. 13-1.) The article states that "Butalbital . . . is a barbiturate with an intermediate duration of action." (Ex. to Johnson Aff., D.E. No. 13-1 at 10.) Defendant objects to the Wikipedia article on hearsay grounds because "Wikipedia is merely an online forum that

anyone (including Plaintiff) can edit."[5] (Def.'s Reply in Supp. of Mot. for Summ. J. 3, D.E. No. 14.) While the Defendant's hearsay objection is technically correct, see Fleishman v. Cont'l Cas. Co., No. 09 C 00414, 2011 WL 5866264, at *4 (N.D. Ill. Nov. 22, 2011) ("As useful as Wikipedia is as an information source, a Wikipedia entry is not admissible evidence."), it does not appear the point for which the Plaintiff was offering the article—that Bupap is a Butalbital and barbiturate—is genuinely in dispute. The Court's own brief survey reveals a common acceptance that Butalbital is a barbiturate. See, e.g., Edens v. Larson, 110 F. App'x 710, 712 n.2 (7th Cir. 2004) ("Both medicines contain butalbital (a barbiturate) and caffeine."); Mickles v. Shalala, 29 F.3d 918, 930 n.9 (4th Cir. 1994) (Luttig, J., concurring) ("The *Physician's Desk Reference* describes Fiorinal as an analgesic for the treatment of tension headaches, which contains . . . a relatively low dosage of butalbital, a short-to intermediate-acting barbiturate with muscle relaxing properties."); Cisneros v. Astrue, No. CV 10–4940–PJW, 2011 WL 4477279, at *2 (C.D. Cal. Sept. 26, 2011) ("Plaintiff . . . had at times been prescribed other medications, including Butalbital, a barbiturate prescribed for pain and headaches . . . ."); Lowe v. Astrue, No. 1:10cv202-WCS, 2011 WL 2694670, at *4 n.5 (N.D. Fla. July 12, 2011) ("Fioricet . . . combines a sedative barbiturate (butalbital), a non-aspirin pain reliever (acetaminophen), and caffeine."); Dorland's Illustrated Medical Dictionary 241 (28th ed. 1994) (defining "butalbital" as "a short-to intermediate-acting barbiturate, used as a sedative in combination with an analgesic in the treatment of tension headache"). Thus, the Court sustains the Defendant's objection to the Wikipedia article but notes that Butalbital is in fact a barbiturate.

---

[5] While the Court recognizes the limited authoritative value of Wikipedia, the Sixth Circuit has repeatedly relied upon the online encyclopedia as a useful source for information. See, e.g., Essex Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc., 282 F. App'x 406, 408 (6th Cir. 2008) ("Membrane roofs, the parties tell us, frequently are used to cover flat roofs, often use a rubber material and often require the use of heat to seal the roof during the installation process.") (citing Wikipedia, Membrane Roofing, http://en.wikipedia.org/wiki/Membrane_ roofing); Nerghes v. Mukasey, 274 F. App'x 417, 418 n.1 (6th Cir. 2008); Lennon v. Metro. Life Ins. Co., 504 F.3d 617, 623 (6th Cir. 2007); Sedrakyan v. Gonzales, 237 F. App'x 76, 77 n.1 (6th Cir. 2007); Matthews v. Ishee, 486 F.3d 883, 894 (6th Cir. 2007); N'Diom v. Gonzales, 442 F.3d 494, 496 (6th Cir. 2006).

Finally, the Plaintiff stated in her response that the Dillingham declaration submitted by Defendant should be stricken because it is "not . . . a properly 'sworn' and notarized/witnessed "Affidavit" required by Rule 56." (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. 15, D.E. No. 13.) To the contrary, federal law provides that "any matter . . . required or permitted to be supported . . . by . . . affidavit . . . may, with like force and effect, be supported . . . by the unsworn declaration . . . in writing of such person which is subscribed by him, as true under penalty of perjury, and dated . . . ." 28 U.S.C. § 1746; see also United States v. Davis, 28 F. App'x 502, 503 (6th Cir. 2002) ("Declarations made under penalty of perjury may be submitted in lieu of affidavits in federal court."). Dillingham's declaration satisfies § 1746 as it is made under penalty of perjury, signed and dated. Additionally, Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The declaration also meets those requirements. Thus, Plaintiff's objection is overruled.

B.  Claim for Retaliatory Discharge

Turning to the merits of the case, Johnson alleges that Total Renal fired her in retaliation for filing the workers' compensation claim based on her December 2009 injury. Under Tennessee's at-will employment rule, "an employee or an employer may terminate an employment-at-will relationship at any time, with or without good cause." Conatser v. Clarksville Coca-Cola Bottling Co., 920 S.W.2d 646, 647 (Tenn. 1995). However, Tennessee courts recognize "an employee's ability to file a retaliatory discharge claim when his or her employment is terminated for filing a workers' compensation claim . . . as a narrow exception to the employment at will doctrine." Newcomb v. Kohler Co., 222 S.W.3d 368, 389 (Tenn. Ct.

App. 2006) (citing Clanton v. Cain-Sloan Co., 677 S.W.2d 441, 445 (Tenn. 1984)), perm. app. denied (Jan. 29, 2007). To prevail under a retaliatory discharge theory, the Plaintiff initially must make out a prima facie case by presenting proof of four elements: (1) she was employed by Total Renal at the time of her injury; (2) she made a claim against it for workers' compensation benefits; (3) Total Renal terminated her employment; and (4) her claim for workers' compensation benefits was a substantial factor in its motivation to fire her. Anderson v. Standard Register Co., 857 S.W.2d 555, 558 (Tenn. 1993); see also Kinsler v. Berkline, LLC, 320 S.W.3d 796, 800 (Tenn. 2010) (listing the elements of a general retaliatory discharge claim).

    1.  Johnson's Prima Facie Case

It is undisputed that Johnson was employed by Total Renal when she was injured in December 2009, that she filed a workers' compensation claim for that injury, and that she was terminated shortly thereafter. The dispute in this case focuses on the causation element. That is, Defendant contends that Johnson cannot prove that her workers' compensation claim was a substantial factor in its decision to terminate her.

"To meet the substantial factor requirement of her *prima facie* case, a plaintiff must show either direct or 'compelling circumstantial evidence' of a causal connection between the workers' compensation claim and the termination." Crook v. Simpson Strong-Tie Co., Nos. 3:10-cv-00445, 2:10-cv-00099, 2:10-cv-00100, 2012 WL 123988, at *10 (M.D. Tenn. Jan. 17, 2012) (citing Frizzell v. Mohawk Indus., No. M2004-01598-COA-R3-CV, 2006 WL 1328773, at *3 (Tenn. Ct. App. May 15, 2006); Reed v. Alamo Rent-A-Car, Inc., 4 S.W.3d 677, 685 (Tenn. Ct. App. 1999); Thomason v. Better-Bilt Aluminum Prods., Inc., 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992)). "Proof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury." Anderson, 857 S.W.2d at 558–

12

59. Additionally, "[a] plaintiff's subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship." Newcomb, 222 S.W.3d at 391.

Direct evidence in retaliatory discharge cases includes proof that a discriminatory policy of the employer led to the employee's termination or an admission by the employer that it dismissed her for engaging in a protected activity. Austin v. Shelby Cnty. Gov't, 3 S.W.3d 474, 480–81 (Tenn. Ct. App. 1999), perm. app. denied (July 6, 1999); Thomason, 831 S.W.2d at 293. Johnson has offered no direct evidence. Consequently, she must present "compelling circumstantial evidence" of a causal connection between her claim for workers' compensation benefits and termination. Crook, 2012 WL 123988, at *10. In Newcomb, the Tennessee Court of Appeals summarized the types of evidence a court may consider when the plaintiff seeks to prove a retaliatory discharge through circumstantial evidence:

> In an effort to prove causation, a plaintiff can present circumstantial evidence in numerous forms, to include the employer's knowledge of the compensation claim, the expression of a negative attitude by the employer toward an employee's injury, the employer's failure to adhere to established company policy, discriminatory treatment when compared to similarly situated employees, sudden and marked changes in an employee's performance evaluations after a workers' compensation claim, or evidence tending to show that the stated reason for discharge was false.

Newcomb, 222 S.W.3d at 391. Although closeness in time between the workers' compensation claim and termination is not solely sufficient to show causation, id., "temporal proximity plus *other circumstantial evidence* of causation" also satisfies the plaintiff's burden of presenting a prima facie case. Craig v. Porter Cable/Delta, No. 1:05-1018-T-An, 2006 WL 1006857, at *8 (W.D. Tenn. Apr. 17, 2006).

Johnson's primary proof of causation is evidence tending to show that Total Renal's stated reason for terminating her was not true. In Bennett v. ERMCO Components, Inc., No. 07-

2305, 2008 WL 867894 (W.D. Tenn. Mar. 28, 2008), this Court considered a similar case involving an employee's discharge after filing a workers' compensation claim. The employer contended that it fired the plaintiff because it discovered that he had falsified his employment application by indicating he was previously an employee of the Tennessee Department of Corrections, when he was actually an inmate. Id. at *2. However, the plaintiff produced evidence from which the trier of fact could have concluded that the employer knew of his inmate status when it hired him. Id. at *4–5. The Court held that the employee's evidence tending to show that his employer's stated reason for discharging him was false, when coupled with the temporal proximity of his claim and firing, was sufficient evidence of causation to make out a prima facie case. Id. at *4.

    As the Court will discuss further in the context of pretext, Johnson has presented evidence that the Bupap sample was the cause of her positive drug test, that she was authorized by her employer to take the sample, and thus that she did not violate the Defendant's drug-free policy. That evidence raises a genuine issue of material fact concerning Total Renal's stated reason for firing her. See Newcomb, 222 S.W.3d at 391 (stating that causation can be established with evidence tending to show that the stated reason for discharge was false). Additionally, the closeness in time between Johnson's workers' compensation claim and termination is evidence of a causal connection between the two events. Johnson was injured on Saturday, December 26, 2009, and filed her claim with the Defendant on the following Monday. (Johnson Depo. 22, D.E. No. 12-4.) Total Renal discharged her three weeks later on January 19, 2010. (Dillingham Decl. ¶ 8, D.E. No. 12-3; Corrective Action Form, Ex. 11 to Johnson Depo., D.E No. 12-4.) The short period of time between the two events could lead the trier of fact to conclude that Plaintiff's termination was related to her claim. See Bennett, 2008 WL 867894, at *4 (two months between

claim and dismissal was evidence of causation). Plaintiff's evidence raising doubts about the legitimacy of her failed drug screen, as well as the temporal proximity between her claim and termination, satisfies her prima facie case of retaliation. See id. (finding sufficient evidence of causation through proof challenging employer's stated reason for discharge and a less than two month period between the claim and termination); Whirlpool Corp. v. Pratt, No. M2007-02534-COA-R3-CV, 2008 WL 4615709, at *6–7 (Tenn. Ct. App. Oct. 17, 2008) (affirming trial court's finding that employee's termination the day after she was treated for work-related injuries and insufficient evidence that employee actually violated employer's drug testing policy satisfied the substantial factor requirement); Smith v. Bridgestone/Firestone, Inc., 2 S.W.3d 197, 198 (Tenn. Ct. App. 1999) (reversing summary judgment for employer where employee was fired three weeks after filing workers' compensation claim and factual questions existed concerning whether employee violated the plant policy for which he was terminated), perm. app. denied (Sept. 13, 1999).

Defendant insists that Johnson cannot establish causation because she concedes that no one affiliated with Total Renal, including Dillingham or Fowler, made any negative statements about her workers' compensation claim. Additionally, it notes that Johnson does not know of any employees who failed a drug test and were not terminated. And finally, it points out that Plaintiff testified she was not sure if Fowler knew about her claim at the time she decided to terminate her. Although those points do weigh against a finding of causation, they simply present other evidence for the trier of fact to consider in determining whether Plaintiff's claim was a substantial factor in Defendant's termination decision.

2.   Total Renal's Legitimate, Nondiscriminatory Reason for Termination

When circumstantial evidence of retaliation has been offered, the familiar burden-shifting analysis set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) prescribes that the plaintiff must first demonstrate a prima facie case of retaliatory discharge.[6] Ellis v. Buzzi Unicem USA, 293 F. App'x 365, 368–69 (6th Cir. 2008); Anderson, 857 S.W.2d at 558–59. Because she has done so, the burden of production shifts to the employer to offer a legitimate, nondiscriminatory explanation for its actions. Anderson, 857 S.W.2d at 559.

The Defendant asserts that Plaintiff was terminated because she violated the company's drug-free workplace policy. Total Renal's employee handbook prohibited its employees from using illegal narcotics, as well as prescription drugs for which the employee did not have a prescription. (Teammate Handbook 17, Ex. 4 to Johnson Depo., D.E. No. 12-4.) It also provided that employees "who violate[d] this policy [were] subject to immediate discipline, up to and including termination." (Id.) Johnson submitted a urine sample in conjunction with her workers' compensation claim on December 29, and the test results revealed the presence of barbiturates and Butalbital. (Test Results, Ex. 20 to Johnson Depo., D.E. No. 12-4.) Although Plaintiff disclosed to her employer that she had taken Amitriplian, Flexeril, and Darvocet, she did not mention the Bupap samples. (Ex. 9 to Johnson Depo., D.E. No. 12-4.)

---

[6] In Gossett v. Tractor Supply Co., 320 S.W.3d 777, 781–86 (Tenn. 2010), a divided Tennessee Supreme Court determined that McDonnell Douglas was inconsistent with the state's summary judgment standard and held that Tennessee courts would no longer utilize the federal framework for common law retaliatory discharge claims. However, this Court and others have determined that the summary judgment standard is a procedural rule, not substantive. See, e.g., Reed v. Inland Intermodal Logistics Servs., LLC, No. 09-2607, 2011 WL 4565450, at *5–7 (W.D. Tenn. Sept. 29, 2011); Moling v. O'Reilly Auto., Inc., 763 F. Supp. 2d 956, 974–78 (W.D. Tenn. 2011). Additionally, the Tennessee General Assembly overruled Gossett by statute. See Tenn. Code Ann. §§ 4-21-311(e), 50-1-304(g). Thus, the Court will apply McDonnell Douglas in this case. Regardless, even under the burden-shifting framework, Johnson has presented sufficient evidence to advance her claim to trial.

Total Renal contends that Dillingham spoke with the Plaintiff about the positive drug screen. (Dillingham Decl. ¶ 6, D.E. No. 12-3.) It states that although Johnson claimed a doctor had authorized her use of the substances, she never provided a prescription for them. (Id.) Accordingly, Dillingham conferred with People Services Manager Yolanda Fowler, who made the decision to terminate Johnson's employment. Total Renal's proffered reasons for firing Plaintiff—that she violated the company's drug-free workplace policy—satisfies its burden of presenting a legitimate, nondiscriminatory reason for its action. See Goodbar v. Technicolor Videocassette of Mich., Inc., No. 09-2553, 2010 WL 5464796, at *10–11 (W.D. Tenn. Dec. 30, 2010) (granting summary judgment where violation of employer's zero tolerance drug-free workplace policy was shown to be the sole reason for employee's termination), recons. denied, 2011 WL 1637020 (Apr. 29, 2011).

3.   Johnson's Showing of Pretext

Upon such a showing by the Defendant, the Plaintiff must produce evidence that the proffered reason was pretextual. Ellis, 293 F. App'x at 369. Johnson may do so "by showing the employer's reasons 'have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the discharge, or if they were factors, by showing that they were jointly insufficient to motivate the discharge.'" Frizzell, 2006 WL 1328773, at *3 (quoting Moore v. Nashville Elec. Power Bd., 72 S.W.3d 643, 652 (Tenn. Ct. App. 2001)). The Court finds that Plaintiff has presented sufficient evidence from which the trier of fact could conclude that her drug test results were a pretext to fire her for making a workers' compensation claim.

Johnson testified that she spoke with Dillingham by phone twice on the day of her injury. (Johnson Depo. 133–34, D.E. No. 12-4.) On the first occasion, she reported her injury and inquired as to how she should file a workers' compensation claim. (Id. at 132; Johnson Aff. ¶ 3,

D.E. No. 13-1.) Dillingham guided her to the forms and assisted as Plaintiff filled them out. During the second conversation, Dillingham inquired if Johnson "had anything at the house to take" for her injury. (Johnson Depo. 132, D.E. No. 12-4; Johnson Aff. ¶ 4, D.E. No. 13-1.) When Plaintiff informed her that Brown was providing sample medication from the Jackson Clinic Convenient Care,[7] Dillingham advised her to take the samples and "see how that worked over the weekend." (Johnson Depo. 133, D.E. No. 12-4; Johnson Aff. ¶ 4, D.E. No. 13-1.) Plaintiff related that Dillingham was fine with her using the sample medication until her workers' compensation claim was processed and she could see a doctor on the following Monday. (Johnson Aff. ¶ 4, D.E. No. 13-1.) Dillingham's declaration omits any mention of her conversations with the Plaintiff on the day of the injury. However, in response to the Plaintiff's proposed statement of facts, the Defendant admitted to Dillingham making those statements. (Def.'s Resp. to Pl.'s Stmt. of Additional Facts ¶ 7, D.E. No. 15.)

Johnson stated that she was shocked when she learned that she was being terminated and could think of no reason why other than her workers' compensation claim. The Plaintiff's own subjective beliefs and speculation about why she was terminated do not show pretext. Ellis, 293 F. App'x at 375–76; Newcomb, 222 S.W.3d at 391. However, Johnson's testimony and Defendant's admission that Dillingham told her to take the samples and "see how that worked over the weekend" do. When viewed in the light most favorable to the Plaintiff, the facts reflect that Johnson obtained samples of Bupap from Brown at the Convenient Care, received authorization from her supervisor to take those samples, and then was terminated when they

---

[7] The record is not entirely clear on whether Johnson specified to Dillingham that the sample medication she obtained from Brown was Bupap. However, Plaintiff was asked by counsel for the Defendant during her deposition if "[t]his is what you informed [Dillingham] about, that you had taken analgesic which contains Butalbital?" (Johnson Depo. 174, D.E. No. 12-4.) Johnson responded, "Yes." The Plaintiff also stated in her affidavit that she obtained Bupap samples from Brown and then informed Dillingham that she "had called Denny and that *this* medication was being provided to [her] . . . ." (Johnson Aff. ¶ 4, D.E. No. 13-1) (emphasis added). When read contextually, Johnson's testimony suggests that she told Dillingham that the sample was Bupap, not just some unnamed medication.

18

appeared on her drug test. If the jury accepts Plaintiff's contentions, the drug test results clearly could be a pretextual basis on which to fire her.

Nonetheless, the Defendant insists that it decided to fire Johnson under an honest and good faith belief that she had violated the company's drug-free workplace policy when she tested positive for Butalbital and barbiturates and did not provide a prescription. Under the honest belief rule, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001). For the rule to apply, "'the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" Wright v. Murray Guard, Inc., 455 F.3d 702, 708 (6th Cir. 2006) (quoting Smith v. Chrysler Corp., 155 F.3d 799, 806–07 (6th Cir. 1998)); see also Thayer v. Tyson Foods, Inc., 355 F. App'x 886, 890–91 (6th Cir. 2009) (applying honest belief rule to Tennessee workers' compensation retaliatory discharge claim).

Total Renal notes that it asked the Plaintiff during deposition whether Fowler knew about her workers' compensation claim at the time she made the termination decision, to which the Plaintiff responded, "I'm for not sure." (Johnson Depo. 189, D.E. No. 12-4.) Because the burden is on the Defendant to establish that it acted on an honest belief, Clay v. United Parcel Serv., Inc., 501 F.3d 695, 713 (6th Cir. 2007), it would be incumbent on Total Renal to establish that Fowler did not have knowledge of Plaintiff's claim. Defendant does not contend that Fowler did not know about the claim, only that Johnson was not aware if she did. As the Plaintiff has pointed out, the very reason she was required to take a drug test was due to her worker's compensation claim. In fact, the corrective action form that terminated the Plaintiff noted that a

"[d]rug screen [was] done for Worker[s'] Compensation Claim." (Corrective Action Form, Ex. 11 to Johnson Depo., D.E No. 12-4.) Furthermore, Dillingham, who assisted the Plaintiff in completing her workers' compensation claim form, is the person who raised the positive drug screen to Fowler's attention. (Dillingham Decl. ¶ 7, D.E. No. 12-3.) Since the drug screen was performed in conjunction with the processing of a workers' compensation claim, it is reasonable to conclude that Dillingham discussed the basis for the test or that Fowler knew why the test was being administered.

Defendant also focuses on the fact that Johnson never produced a prescription for the Bupap sample. While that may be case, the drug-free workplace section of Total Renal's Teammate Handbook does not require that one be provided. It states only that the prohibition against using illegal substances also applies "to the possession of prescription narcotics without a prescription, as well as prescription narcotics that are taken in violation of the prescription." (Teammate Handbook 17, Ex. 4 to Johnson Depo., D.E. No. 12-4.) The testimony presented reflects that Dillingham contacted Johnson after receiving the drug test results to ask if she had an explanation and that Plaintiff told her the positive test was caused by a sample of Bupap authorized by Dr. Weaver. Because nothing in the policy expressly requires that an employee's prescription be written, the trier of fact could find that the sample was "prescribed" because it was approved by a medical professional. It also could conclude that Johnson's failure to provide Defendant with a written prescription was not a violation of the drug-free workplace policy because the terms of that policy did not require that she do so. In short, the Court finds that Defendant has not shown that it acted under a good faith, albeit mistaken, belief that Plaintiff violated the company's drug use policy.

IV. CONCLUSION

For the reasons discussed herein, the Defendant's motion for summary judgment (D.E. No. 12) is DENIED.

IT IS SO ORDERED this 15th day of March, 2012.

s/ J. DANIEL BREEN_____<br>
UNITED STATES DISTRICT JUDGE